On appellant - cross-respondent's petition for reconsideration filed October 26, and respondent - cross-appellant's response to petition for reconsideration filed November 16, reconsideration allowed; former opinion (202 Or App 79, 120 P3d 1260 (2005)) modified and adhered to as modified January 18, 2006

Margie A. GODDARD,
as Personal Representative for the Estate of
Marc E. Goddard, Deceased,
*Respondent - Cross-Appellant,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Appellant - Cross-Respondent.*

9005-03204; A118750

126 P3d 682

James N. Westwood and Stoel Rives, LLP, and Thomas H. Tongue and Dunn Carney Allen Higgins & Tongue LLP for petition.

Jeffrey M. Batchelor and Markowitz, Herbold, Glade & Mehlhaf, PC, and William A. Barton, Kevin K. Strever, and Barton & Strever, P.C. for response.

Before Haselton, Presiding Judge, and Ortega, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Defendant Farmers Insurance Company of Oregon petitions for reconsideration of our decision in *Goddard v. Farmers Ins. Co.*, 202 Or App 79, 120 P3d 1260 (2005), on two grounds. First, defendant contends that we erroneously treated prejudgment interest of $589,000 as "economic damages" and as "compensatory damages" in engaging in the due process "ratio" assessment prescribed in *State Farm Mut. Ins. v. Campbell*, 538 US 408, 123 S Ct 1513, 155 L Ed 2d 585 (2003), and its antecedents. *See Goddard*, 202 Or App at 110-11, 118-22. Second, defendant contends that we erred in our disposition of plaintiff's assignment of error on cross-appeal, regarding whether the trial court properly offset $325,000 that plaintiff had received from her underinsured motorist coverage carrier. *Id.* at 103-07. We reject defendant's argument concerning the $325,000 offset without discussion. However, we write to address defendant's first argument, regarding our characterization and treatment of the prejudgment interest for purposes of assessing the punitive damages "ratio." As described below, we modify our previous opinion in one respect only and adhere to our opinion as so modified.

In our prior opinion, we concluded that the jury's award of $20,718,576 in punitive damages was constitutionally excessive, in part because of the ratio of punitive damages to "compensatory" damages. *Id.* at 118-22. Our calculation of the ratio, *id.* at 110-11, was predicated on our determination that the total amount of the "compensatory" component of the ratio "was approximately $1,280,000," which consisted of (1) "principal of $690,619.20" and (2) "roughly $589,000" in prejudgment interest (9 percent per annum on the principal amount for approximately 12 years and four months). We characterized the sum of those components as plaintiff's "total economic damages." *Id.* at 110.

On reconsideration, defendant contends that, by characterizing the prejudgment interest as "economic damages" and as "compensatory damages" for purposes of the punitive damages "ratio" analysis, we gave plaintiff relief that she never sought on appeal—that is, we corrected a matter that plaintiff had not challenged by way of cross-appeal.

In particular, defendant points out that, before the trial court, plaintiff had submitted a proposed form of judgment that would have included prejudgment interest in the amount of compensatory damages, but defendant objected to that proposed treatment. The trial court sustained defendant's objection—and, instead, entered a form of judgment that awarded prejudgment interest separately from "economic damages." *See Goddard,* 202 Or App at 84 (setting forth appendix to judgment).[1]

Defendant is correct that, on her cross-appeal, plaintiff did not assign error to that ruling. Accordingly, defendant is correct that, to the extent that our prior opinion characterized prejudgment interest as being included in plaintiff's "economic damages," that characterization was erroneous. Our prior opinion so characterized prejudgment interest only once. In our discussion of plaintiff's compensatory recovery, we stated that, "[w]hen [the prejudgment interest of $589,000 is] added to the principal of $690,619.20, the total *economic damages* should have been approximately $1,280,000." *Id.* at 110 (emphasis added). We correct and modify that sentence to read as follows:

> "When added to the principal of $690,619.20, plaintiff's total compensatory loss was approximately $1,280,000."

As explained below, our misuse of the term "economic damages" did not affect our disposition of any legal issue; nevertheless, we correct that misstatement in order to avoid further confusion as to what is, or is not, properly considered "compensatory" for purposes of the assessment of the punitive damages "ratio."

The thrust of defendant's position on reconsideration is, of course, much more sweeping than simply seeking that minor correction. Defendant contends that, because "prejudgment interest is not 'damages' for any purpose," the compensatory component of the punitive damages ratio must be reduced by $589,000 (*i.e.,* reduced by approximately 46

---

[1] Defendant did not, and does not, contest plaintiff's entitlement, as recognized by the trial court, to recover prejudgment interest.

percent) with a concomitant reduction of defendant's maximum constitutionally permissible liability for punitive damages (from approximately $3,900,000 to approximately $2,070,000). We disagree.

Defendant invokes *Dynagraphics, Inc. v. U.S. National Bank of Oregon*, 100 Or App 108, 785 P2d 760, *rev dismissed*, 310 Or 120 (1990), as support for the proposition that "prejudgment interest is not 'damages' for any purpose, including appellate review of the size of a punitive damage award." *Dynagraphics* stands for no such thing. In *Dynagraphics*, we considered whether the trial court had properly "submit[ted] to the jury as an item of awardable damages" certain "late charges" and interest payable under a promissory note. The defendant argued that those amounts constituted "prejudgment interest" and were not "readily ascertainable." *Id.* at 114. We held that the late charges were not "prejudgment interest," stating that "[t]hat term has been used in the cases to refer to interest, included in a judgment, that is calculated on the damages that the judgment awards and from the date that the damages accrued rather than from the date of the judgment." *Id.* Thus, nothing in *Dynagraphics* purports to address what items of a plaintiff's loss are properly included in the "compensatory" component of the "ratio" consideration mandated by *State Farm Mut. Ins.* and its antecedents.

The propriety in this case of including prejudgment interest in the "compensatory" component of the ratio is demonstrated by reference to the facts established here. As recounted in our original opinion, defendant breached its duty to plaintiff's assignor, Munson, to settle a claim within policy limits in a clear liability wrongful death case. As a result of that breach, a verdict was entered against Munson in 1990 that exceeded policy limits by about three-quarters of a million dollars. *Goddard*, 202 Or App at 96. Moreover, defendant did not even pay out the policy limits until some eight years after that judgment was entered against Munson. *Id.* at 84, 108 n 17. Munson was liable to Goddard not just for the principal amount due under the 1990 judgment, but also for the interest that accrued on that judgment at the statutory rate. *Id.* at 108-09 (describing accrual of interest pursuant to ORS 82.010). Thus, as a result of defendant's bad faith

failure to settle the wrongful death case, plaintiff (as Munson's assignee) suffered a monetary loss not just in the amount of the wrongful death judgment, but also in the amount of the interest that accrued on that judgment. *See James v. Coors Brewing Co.*, 73 F Supp 2d 1250 (D Colo 1999) (prejudgment interest is an element of compensatory damages, because "the loss caused by the tortious conduct occurred at the time of the resulting injury but * * * the damages paid to compensate for that loss are not received by the injured party until later").

The "ratio" calculus prescribed in decisions of the United States Supreme Court concerns "the disparity between *the actual or potential harm* suffered by the plaintiff and the punitive damage award." *State Farm Mut. Ins.*, 538 US at 418 (emphasis added). The amount of interest that accrued on the wrongful death judgment after its entry against Munson in 1990 constituted "actual harm" to Munson, caused by defendant's tortious conduct. The labeling of items of damages as "economic," "noneconomic," or "interest" do not define or control what constitutes "actual or potential harm" for purposes of the Due Process Clause "ratio" analysis. We, thus, adhere to our conclusion that the interest that ran on a judgment that was entered due to defendant's tortious conduct was properly considered "compensatory" for purposes of engaging in the "ratio" assessment of the due process "excessiveness" analysis.

Reconsideration allowed; former opinion modified and adhered to as modified.